UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal no. 13-cr-10118-DJC |
| | ) | |
| DAVID SILVA | ) | |

**DEFENDANT'S MOTION TO DISMISS BASED ON LOST OR DESTROYED EXCULPATORY EVIDENCE**

Now comes the defendant, David Silva, and respectfully requests that this Court dismiss the indictment against him charging him with possession of three firearms due to the destruction of exculpatory DNA evidence in this case. The government has notified Silva and provided discovery indicating that when the chemist attempted to test the DNA evidence obtained from a firearm in this case, the DNA was destroyed prior to testing. As such, Silva has been foreclosed of the only available means of proving his innocence in this case.

Proceeding to trial in light of this destruction of exculpatory evidence would violate Silva's right to due process pursuant to the Fifth and Fourteenth Amendments of the United States Constitution. See Brady v. Maryland, 373 U.S. 83, 87 (1963); California v. Trombetta, 467 U.S. 479, 489 (1984); Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

**FACTS**

Since the inception of this case, Silva has maintained that the DNA evidence in this case would prove to be exculpatory. While the firearms recovered were found in Silva's bureau drawer, Silva was not present at the time of the search or the days

immediately prior; Silva's brother had been staying in the room as a guest during the time of the search and in the days prior to the search.

During Silva's arraignment on April 30, 2013, Silva requested bail maintaining that once the DNA testing was completed in this case, Silva would be exonerated of the charges. On May 2, 2013, the magistrate judge ordered Silva detained prior to trial but indicated that he could seek bail review if the DNA results proved to be exculpatory. During the detention hearing, the government represented that DNA testing would be completed by the first week in July.

In August, the government indicated that DNA testing could take up to 8 months to complete. On August 16, 2013, Silva filed a Motion to Reconsider the Order of Detention, maintaining that the DNA testing would be exculpatory, and that the delay in completing DNA testing would greatly prejudice him as the testing would prove he had not handled the firearms, warranting his release.

On December 11, 2013, the government contacted defense counsel and indicated that the limited DNA evidence in this case had been destroyed by the chemist conducting testing on the DNA.

**ARGUMENT**

Brady established that a defendant has a due process right to request and receive evidence that the government possesses which is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is material to guilty or punishment if the evidence could be taken to put the case in a different light to undermine the verdict. Kyles v. Whitely, 514 U.S. 419, 435 (1995). In cases where the government no longer possesses the disputed evidence, in order to establish a constitutional violation, "the

evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489 (1984). The Supreme Court, explaining further the "apparently exculpatory" requirement, emphasized that the evidence must be exculpatory before it is lost or destroyed. Olszewski v. Spencer, 466 F.3d 47, 56 (1st Cir. 2006) (explaining Court's interpretation of Trombetta in Arizona v. Youngblood).

If the evidence is not deemed "apparently exculpatory", but only "potentially useful" then the court must also find bad faith to establish a due process violation. See Olszewski v. Spencer, 466 F.3d at 56. However, with "apparently exculpatory" evidence, there is no bad faith requirement because under Brady, withheld material exculpatory evidence violates the defendant's rights irrespective of the good or bad faith of the prosecution. Id.

In this case, Silva has maintained since the onset of this case that the DNA evidence would be exculpatory, indicating the firearms were not his and he never handled the firearms. As such, the DNA evidence would reveal that someone other than Silva handled the firearms.

A. The DNA evidence was Apparently Exculpatory

The DNA evidence in this case was material because it was apparently exculpatory as it would have shown that Silva's DNA was not on the firearms found at 197 Meetinghouse Road and therefore, Silva did not handle the firearms or store them in his bureau drawer.

While Trombetta found that the destroyed breath test evidence was not "apparently exculpatory" and thus not material, this was due to the fact that "the chances

3

[were] extremely low that preserved samples would have been exculpatory." 467 U.S. at 488-89. A testing of the breath test evidence was already conducted and determined that the defendant's blood alcohol level was beyond the legal limit. Trombetta, 467 U.S. at 489 (for evidence to be material, it must be expected to play a significant role in the suspect's defense). The defendant merely argued that due to the destruction of the breath test sample, he was foreclosed of the opportunity to re-test the sample. Id. Additionally the police "were acting 'in good faith and in accord with their normal practice'" when they disposed of the breath samples. Id., (citing Killian v. United States, 368 U.S. 231, 242 (1961)).

Similarly, in Arizona v. Youngblood, the defendant argued that his due process rights were violated because the semen samples in the case were not tested immediately after they were obtained and were not refrigerated and as such, the government was unable to conduct proper testing of the samples. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). After testing the samples, the chemist was unable to detect any blood group substances in the sample. Id. Additionally, while the state moved to compel respondent to provide blood and saliva samples for comparison, the court denied the motion on the grounds that the state had not obtained a sufficiently large semen sample to make a valid comparison. Id. at 53-54. The defendant's expert was, however, provided with the samples so he could attempt to conduct his own testing of the samples but declined to do so. Id. Since the government did not engage in bad faith or purposely stall testing, the Court found no due process violation occurred. Id.

Here, unlike Trombetta, the DNA evidence was destroyed prior to the government's testing of the DNA. As such, this is not a situation were Silva merely

seeks to re-examine evidence that was already determined to be inculpatory. Since it is impossible for DNA evidence to be "apparently exculpatory" before testing was conducted, the only means of determining whether this evidence was inculpatory or exculpatory would be to conduct testing. Silva maintains that this evidence would have been exculpatory had the DNA evidence not been destroyed as the firearms were not his, he never touched the firearms and he was not present in the home in the days leading up to the search as he was in the custody of the police. Notably, there were other individuals staying in the apartment at the time the firearms were found.

Furthermore, unlike Youngblood, had the DNA evidence been tested, it would have either included or excluded Silva as a source of the DNA. In Youngblood, however, there were some tests conducted on the samples but they were inconclusive as to the assailant's identity. Furthermore, even if the evidence was tested earlier or properly preserved, there still may not have been a sufficient sample in order to conduct testing of the evidence. The defendant also had the opportunity to conduct his own testing in an attempt to exclude himself as the source of the semen found on the victim's body and his clothing.

Since the destruction of DNA evidence in this case forecloses Silva's opportunity to present the only meaningful defense available to him and because it cannot be said that "the chances [are] extremely low that preserved samples would have been exculpatory," the DNA evidence was material and apparently exculpatory. See Brady v. Maryland, 373 U.S. 83, 87 (1963); Arizona v. Youngblood, 488 U.S. 51, 58 (1988); California v. Trombetta, 467 U.S. 479, 489 (1984). As such, the destruction of this evidence violates Silva's due process rights and the charges against him must be dismissed.

B.   <u>The DNA was Irreplaceable, and Silva is Unable to Obtain Comparable Evidence by Other Means</u>

The question of whether evidence is "to some extent irreplaceable" is a question of law, based upon the underlying facts. <u>Trombetta</u>, 467 U.S. at 489; <u>Olszewski</u>, 466 F.3d at 58. Irreplaceability requires a showing that the defendant is unable to recreate the substance of the missing evidence through testimony. <u>Olszewski</u>, 466 F.3d at 58. In <u>Olszewski</u>, the destroyed evidence was a witness's original written, one paragraph statement. <u>Id</u>. In that case, two witnesses had testified to the contents of the statement; this testimony did not conflict. <u>Id</u>. The Court determined the statement was not irreplaceable, because the witnesses were able to testify, without conflict, as to the substance of the destroyed statement, Olszewski failed to show that the statement contained additional, material information that was lost as a result of the destruction. <u>Id.</u> at 58-59.

Unlike <u>Olszewski</u>, Silva is unable to recreate the results of any DNA testing. The DNA testing is crucial to Silva's defense as the DNA was the only means for Silva to establish that although the firearms were in his wardrobe, he did not place them there. Additionally, the individual who actually placed the weapons in the wardrobe at 197 Meetinghouse Road would have a Fifth Amendment right not to assert ownership over these firearms.

While Silva should be entitled to inform the jury that the DNA evidence in this case was destroyed, that is not sufficient. In <u>Trombetta</u>, the court found that the defendant could have presented a number of ways that the breath test machine might have malfunctioned, undermining the results of the testing. 467 U.S. at 489. Furthermore, the defendant had the opportunity to inspect the machine used or to obtain the machine's

6

weekly calibration results and breath samples used in the calibrations and could have cross-examined the officer was to operator error issues.  Id.  Lastly, the two sources capable of interfering with test results – radio waves and chemicals that appear in blood due to dieting – could have been explored by presenting evidence that the testing was done while exposed to radio waves or that the defendant was engaging in a particular diet at the time of testing.  Id.  Here, however, Silva is not attempting to undermine the results to establish his innocence – he needs the actually DNA testing result itself to prove his innocence and essentially now has no other means of doing so.

The failure to preserve the DNA evidence leaves Silva with inadequate means to establish that an individual staying in his apartment as a guest placed the firearms in his wardrobe, not him.  In United States v. Cooper, the Ninth Circuit considered whether destruction of laboratory equipment, that the government alleged the defendants had used to make methadone, violated the defendants' due process rights.  983 F.2d 928 (9th Cir. 1993).  The Ninth Circuit determined that the destruction did violate defendants' rights, noting, "General testimony about the possible nature of the equipment would be an inadequate substitute for testimony informed by its examination."  Id. at 932.

Like in Cooper, Silva is now left with general testimony indicating that DNA samples were retrieved from the firearms but destroyed before testing was conducted and leaves only speculation that Silva may or may not have provided the DNA evidence found on the firearms.  Id.  This "general testimony" without any real examination of the DNA evidence is an inadequate substitute for its presence at trial, and would violate Silva's due process rights.

7

Since there is no other alternative means for Silva to prove he did not possess the firearms in question, the destruction of the DNA evidence in this case violates Silva's right to due process pursuant to the Fifth and Fourteenth Amendments and as such, the charges must be dismissed. See Brady v. Maryland, 373 U.S. 83, 87 (1963); Arizona v. Youngblood, 488 U.S. 51, 58 (1988); California v. Trombetta, 467 U.S. 479, 489 (1984).

C. Even if this Court were to find that the DNA evidence was not "apparently exculpatory," the destruction of this evidence still warrants dismissal.

If the evidence is not deemed "apparently exculpatory", but only "potentially useful" then the court must also find bad faith to establish a due process violation. See Olszewski v. Spencer, 466 F.3d at 56.

Here, it is impossible to determine whether there was bad faith on the part of the government relating to the destruction of the DNA evidence. A report provided by the government relating to the destruction of the DNA evidence merely indicates that the DNA evidence was destroyed "due to a laboratory processing error." The report does not indicate whether the error was due to something the chemist did or did not do or whether it was due to a malfunction with machinery.

Since there is no way to determine whether there was any bad faith on the part of the government, this court should determine that since the evidence was material and Silva does not have any other means of proving his DNA was not on the firearms seized and in actuality, the DNA of another individual was found, the charges against him must be dismissed. See Brady v. Maryland, 373 U.S. 83, 87 (1963); Arizona v. Youngblood, 488 U.S. 51, 58 (1988); California v. Trombetta, 467 U.S. 479, 489 (1984). Failing to do so would result in a violation of Silva's right to due process under the Fifth and Fourteenth Amendments of the United States Constitution.

Wherefore, Silva respectfully requests that this Court dismiss the charges against him due to the destruction of exculpatory evidence in this case.

    Respectfully submitted
    DAVID SILVA
    By his Attorney,

    /s/ Rosemary Scapicchio
    Rosemary Curran Scapicchio
    107 Union Wharf
    Boston, MA 02109
    (617) 263-7400
    BBO# 558312
    scapicchio_attorney@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by complying with this Court's directives on electronic filing.

Dated: June 26, 2014  Signed: /s/ Rosemary Scapicchio